**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIAMOND TUCKER ST. PROPERTY LLC
REDEMPTION LLC, and WESTFAIR, LLC,

      Plaintiffs,

v.

KAREN PUPOVIC and ISMET PUPOVIC,

      Defendants.

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.      Defendants have engineered a campaign of collection harassment targeting Plaintiffs since 2022 and Plaintiffs are in dire need of Court intervention to restrain this ongoing campaign.

2.      More acutely, since 2024, they initiated a purported foreclosure action in the Superior Court of Connecticut to foreclose upon an alleged Judgment lien.

3.      In a macro-sense, this case is about Defendants' improper collection tactics; in a micro-sense, it is about their continued prosecution of a case for which they never properly served Defendants.

4.      The 2024 action was later removed to the United States District Court for the District of Connecticut.[1]

5.      Problematically, for Defendants, at a recent hearing before the Honorable Alvin W. Thompson in the United States District Court for the District of Connecticut, a fatal service defect was not only exposed, and, notably, conceded by the Defendants' Connecticut counsel in that case, who stated,

---

[1] The case number in the District of Connecticut is 3:26-cv-00226-AWT.

1

"If there's an issue with the return date, and *in this case there was*, there's a way to fix it." See, Transcript from July 28, 2026 hearing annexed as Exhibit "**A**," Tr. Page 18, at 24-25.

6.    "Fixing it" requires amending it, which Defendants purported to do, but "fixing it additionally requires serving the Amended Process, as mandated by Conn. Gen. Stat. § 52-72b, which Defendants, indisputably, failed to do, creating a fatal defect and a sham action.

7.    Moreover, by listing Defendant's purported "Agent" address in Summons #1 (State Court Docket Entry 100.00) rather than a corporate principal place of business[2], the Plaintiff committed a fundamental error. This error rendered the paperwork physically and legally incapable of service, making it a constitutional impossibility for the Secretary of the State to execute its forwarding mandate—a reality confirmed by the Superior Court Clerk's explicit docket entry noting that the "summons lists an address **only** for the agent(s) of service for the LLCs." (State Court Docket Entry 103.1) (emphasis added). Acknowledging the Clerk's notation of this defect, the Plaintiff subsequently attempted to file an amended summons (Summons #3, State Court Docket Entry 100.00, dated December 17, 2024) to add the mandatory principal office for the limited liability companies; however, the record is devoid of any return of service confirming that this purported amended summons was ever executed (as required by Conn. Gen. Stat. § 52-72b, and it should be noted that such amended Summons #3 was filed without the mandated leave of the Court.

8.    That fatal service defect deconstructs and renders legally unsustainable the Defendants' collection action.

---

[2] Incidentally, this same error repeats itself in purported Summons # 2 (State Court Docket Entry 103.10) (State Court Docket Entry 103.10); however since there is no evidence on the record that such Summons # 2 was purported to have been served we need not discuss this point further with respect to it.

2

9. Notwithstanding the blatant admission, Defendants' counsel refuses to cease collection activities against the Plaintiffs, despite an untenable and jurisdictionally flawed action, which cannot be salvaged.

### PARTIES

10. Plaintiff, Diamond Tucker St. Property LLC ("DTS") is a Maryland limited liability company with a principal place of business in Beltsville, Maryland and whose members are all domiciled in Virginia.

11. Plaintiff, Redemption LLC ("Redemption") is a Maryland limited liability company with a principal place of business in Beltsville, Maryland and whose members are all domiciled in Virginia.

12. Plaintiff, Westfair LLC ("Westfair") is a New Mexico limited liability company with a principal place of business in Albuquerque, New Mexico and whose members are all domiciled in Virginia.

13. Together, DTS, Redemption, and Westfair are hereinafter referred to as "Plaintiffs."

14. Defendant, Karen Pupovic, is a New York resident and citizen.

15. Defendant, Ismet Pupovic, is a New York resident and citizen.

16. Together, Defendant Karen Pupovic and Defendant Ismet Pupovic are hereinafter referred to as "Defendants" or "Pupovics."

### JURISDICTION AND VENUE

17. This Court has original diversity jurisdiction under 28 U.S.C. § 1332(a) because the Plaintiffs and Defendants are citizens and residents of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

18. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because the Defendants reside in, and directed their collection actions, from this district.

3

**STATEMENT OF FACTS COMMON TO ALL COUNTS**

19.    From April 30, 2020 until March 22, 2022, DTS was the title owner of that certain parcel of real estate colloquially known as 101 Northwood Drive, Easton, Connecticut (the "Property"). On or about March 22, 2022, DTS transferred the Property to Redemption.

20.    From March 22, 2022 until November 16, 2023, Redemption was the title owner of the Property. On or about November 16, 2023, Redemption transferred the Property to Wayfair.

21.    From November 16, 2023 to the present, Westfair was and is the title owner of the Property.

22.    On or about September 12, 2024, the Defendants caused to be filed on the Easton, Connecticut land records of the Property, certain documents purporting to be a "Judgement Lien" and associated documents.

23.    The documents the Defendants filed in the Property's land records purport to evidence a legitimate court Money Judgment against the Plaintiffs, negate the prior transfers of title between the Plaintiffs, and encumber the Property's title.

24.    The documents the Defendants filed in the Property's land records (hereafter, "False Filings"), however, contain false and misrepresented information.

25.    The False Filings wrongly represent that the Plaintiffs are indebted to the Defendants for a specific sum of money and falsely represent that the Plaintiffs were properly awarded an enforceable Money Judgment by the Connecticut Superior Court.

26.    As the current title owner of the Property, Westfair wishes to sell the Property to a yet-to-be-identified third party.

27.    The Defendants filing the False Filings has caused and continue to cause significant confusion and uncertainty as to the Property's chain of title, resulting in the Property having an unmarketable title.

4

28.    The Defendants filing the False Filings has caused the Property to be unmarketable, preventing its sale, and continue to cause Westfair significant difficulty and expense in its ability to market and sell the Property.

29.    The Defendants filing of the False Filings has caused, and continue to cause, the Plaintiffs significant cost and expense attempting to clear the Property's title for sale.

30.    The Defendants used the False Filings to launch an action to foreclose upon the alleged Judgment lien in or around October 2024.

31.    The Defendants purported to commence the foreclosure action by filing a Summons and Complaint in the Superior Court of Connecticut, Judicial District of Fairfield, on October 31, 2024. (Exhibit "**B**", State Court Docket). The original summons specified an impossible return date of October 29, 2024. (Exhibit "**C**," Initial Summons and Complaint). As discussed supra, pursuant to Conn. Gen. Stat. § 52-46a, civil process must be returned to the court clerk at least six days before the return date. Because the Defendants filed the action two days after the specified return date had already expired, the process was *void ab initio*. (Hellman Decl., ¶ 9).

32.    The undisputed factual record demonstrates a total failure to comply with this mandate. Summons #1 specified a return date of **October 29, 2024**. To satisfy § 52-46a, the Defendants were required to return the process to the court clerk no later than October 23, 2024. Instead, the Defendants did not file the action until **October 31, 2024**— two days after the specified return date had already expired. While Defendants filed an Amended Summons, with a return date of November 12, 2024, the Amended Summons was never served, in absolute derogation of Conn. Gen. Stat. §52-72b. As such, the Defendants are stuck with the fatal deficiencies identified in § 52-46a.

33.    The Connecticut Supreme Court has consistently held that compliance with § 52-46a is a mandatory jurisdictional requirement, and a failure to return process within the statutory window renders

the action completely subject to dismissal. See *Concept Associates, Ltd. v. Board of Tax Review*, 229 Conn. 618, 625 (1994). An unreturned or late-returned summons does not constitute an active, pending lawsuit; it is dead on arrival. Because service on a statutory agent only becomes actionable and complete when it is properly returned to the court in accordance with law, the Plaintiffs' failure to file the case six days prior to the return date means that lawful service was never accomplished.

34.    The Plaintiffs removed the action to the United States District Court for the District of Connecticut.

35.    At the July 28, 2026, oral argument on a Motion to Remand, counsel for the Defendants explicitly conceded this fatal timing defect, admitting to the Court that, "If there's an issue with the return date, and *in this case there was*, there's a way to fix it."  *See*, Transcript from July 28, 2026 hearing annexed as Exhibit "**A**," Tr. Page 18, at 24-25.

36.    Problematically for Defendants, although the return date was amended by the filing of an Amended Summons, the Amended Summons, indisputably, was never served.

37.    The Plaintiffs have been, and continue to be, damaged by the Defendants' conduct.

### FIRST COUNT: EQUITABLE RELIEF
### Purported "Judgment Lien" Filed Under False Pretenses

38.    The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

39.    Within the False Filings is a document which purports to represent a "Judgement Lien" against the Property premised on an alleged enforceable Money Judgment awarded to the Defendants against the Plaintiffs.

40.    However, when the Defendants filed the "Judgment Lien" in the Property's land records, no such enforceable Money Judgment was entered against the Plaintiffs and in favor of the Defendants by any Court.

6

41.     The False Filings allege that *Pupovic v. Diamond Tucker St. Property, LLC, FBT-CV-23-6129303-S* (Ct. Sup., 2024) (hereafter, the "Bridgeport Action") was the underlying proceeding that gave rise to the "Judgment Lien" within the False Filings.

42.     The Plaintiffs herein, (who were defendants in the Bridgeport Action) did not receive proper service in the Bridgeport Action and were not afforded any opportunity to mount any defense, but were improperly defaulted for failure to appear.

43.     As unregistered foreign limited liability companies, the Plaintiffs could not have been served under any statutory provisions -- unless they were transacting business within the State (which they were not) and the action against them directly pertained to such transaction of business (which it did not), in which case they would be  deemed to have appointed the Secretary of State as their agent for service of process pursuant to Conn. Gen. Stat. § 34-275(f).

44.     As such, service of process would only have been properly affected upon them if served on the Secretary of State pursuant to Conn. Gen. Stat. § 34-243(r)(b).

45.     The Defendants here (Plaintiffs in the Bridgeport Action) did not affect, or even attempt, service on the Plaintiffs here (Defendants in the Bridgeport Action) via service on the Secretary of State.

46.     Nevertheless, the Bridgeport Action did not culminate in an enforceable Money Judgment.

47.     Plaintiff DTS (a defendant in the Bridgeport Action) appeared and removed the Bridgeport Action to federal court on December 31, 2024, before which no enforceable Money Judgment entered.

48.     Defendants wrongly rely on a portion of a June 21, 2024 hearing transcript as purported evidence of an enforceable Money Judgment within the False Filings.

49.     Such transcript is not an enforceable Money Judgment, and does not evidence an enforceable Money Judgment.

50.     Defendants subsequently filed on the Property's land records, and wrongly rely on, an October 22, 2024 entry of a document ("Judgment File") signed by an Assistant Clerk purporting to evidence entry of an enforceable Money Judgment within the False Filings.

51.     The October 22, 2024 Judgment File is not an enforceable Money Judgment on which the Defendants prior-filed September 12, 2024 False Filing could have been premised.

52.     Further, Assistant Clerks have no power or authority to enter Money Judgments; only Judges have the power and authority to enter Money Judgments,

53.     No Judge entered an enforceable Money Judgment against Plaintiffs upon which the September 12, 2024 False Filing could have been premised.

54.     "Money Judgment" is defined by Conn. Gen. Stat. §52-350a(13):

"Money judgment" means a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money, other than a family support judgment. Money judgment includes any such money judgment of a small claims session of the Superior Court, any foreign money judgment filed with the Superior Court pursuant to the general statutes and in IV-D cases, overdue support in the amount of five hundred dollars or more accruing after the entry of an initial family support judgment. Connecticut General Statutes §52-350a(13).

55.     The Court in the Bridgeport Action did not enter direction or Order for payment.

56.     As there was no enforceable Order for payment in the Bridgeport Action, no enforceable Money Judgment ever entered in that case.

57.     A "JDNO" is a standard notation used to indicate that a judicial notice of a decision or order has been sent by the clerk's office to all parties of record. See *U.S. Bank, National Assn. v. Bennett*, 195 Conn. App. 96, 99 n.2, 223 A.3d 381 (2019).

58.     No JDNO ever issued in the Bridgeport Action with respect to the June 21, 2024 hearing, as would have been required by Connecticut procedural law if an enforceable Money Judgment had entered. Conn. Practice Book § 17-36.

8

59.     No Money Judgment was ever properly served on the defendants in the Bridgeport Action (the Plaintiffs herein).

60.     The Plaintiffs have been damaged, and continue to be damaged, by the presence of the False Filing, including the so-called "Judgment Lien" in the Property's land records.

61.     For these reasons and others, the False Filings, including the purported "Judgment Lien" and associated documents, were recorded on the Property's land records under false pretenses, and must be so determined by this Court.

### SECOND COUNT: STATUTORY RELIEF
### Conn. Gen. Stat. §§ 47-31a, 42-9-518 (f), 49-13, 49-51, 52-325a-d

62.     The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

**The False Filings are a falsely filed record under §§ 47-31a, 42-9-518 (f), 49-13, 49-51, 52-325a-d.**

63.     Defendants' False Filings, and each related filing, are a "falsely filed or amended" record that warrants invalidation pursuant to Conn. Gen. Stat. §§ 47-31a, 42-9-518 (f), 49-13, 49-51, 52-325a-d.

64.     Defendants' False Filings purport to include a lien, but such purported "lien is invalid but not discharged of record" (Conn. Gen. Stat. § 49-51) and warrants invalidation pursuant to Conn. Gen. Stat. § 49-51.

65.     Within the False Filings is a document entitled "*lis pendens*" which is additionally "an attachment, *lis pendens* or other lien which has become of no effect" (Conn. Gen. Stat. § 49-13(a)) that warrants invalidation pursuant to Conn. Gen. Stat. § 49-8, 49-13, 52-325a-d.

66.     The Defendants' False Filings and related filings are falsely filed records.

**The False Filings are a falsely filed record within the meaning of §§ 47-31a and 42-9-518 (f)**

67.     Defendants are responsible for causing the False Filings to be filed in the Property's land records.

68.    The False Filings purport to place an attachment on property of Plaintiffs based upon Defendants' alleged legal claims against Plaintiffs.

69.    The False Filings' sole basis for asserting an attachment on the Property is a purported Money Judgment against the Plaintiffs in the Bridgeport Action.

70.    The Bridgeport Action was an action filed pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §52-552 ("CUFTA") and its only counts and factual allegations pertained to that statute.  A copy of the complaint of the Bridgeport action is attached hereto ac Exhibit "**D**." [3]

71.    The Bridgeport Action did not seek adjudication of any breach of contract claims, whether on the merits or otherwise.

72.    The Pupovics' complaint in the Bridgeport Action did, however, claim that the Pupovics possessed a money judgment against Plaintiffs for purposes of seeking remedies to its CUFTA counts.

73.    However, the Pupovics' claim to possess a money judgment against Plaintiffs was false at the time they made it. As of November 28, 2023, the date the Pupovics initiated the Bridgeport Action, they possessed no money judgment of any kind against the Plaintiffs from any court.

74.    Defendants are not, and never have been, "creditors" of the Plaintiffs under CUFTA.

75.    Plaintiffs are not, and never have been, "debtors" of the Defendants under CUFTA.

76.    Absent an enforceable Money Judgment, which did not exist, and certain other conditions precedent which were not present, Defendants could not rightfully record a Judgment Lien on the Property's land records, nor initiate an action to foreclosure or execute upon any such non-existent Judgement Lien.

---

[3] The Bridgeport Action has been recognized in *Pupovic et al v. Diamond Tucker St. Property, LLC et al* 3:24-cv-01969-VAB (D. Conn., 2024) to be an action brought solely under CUFTA. *Id., Order,* ECF 38 at 2 ("On November 28, 2023, Karen and Ismet Pupovic filed their Complaint in the Superior Court of Connecticut, Judicial District of Fairfield, at Bridgeport suing Diamond Tucker St. Property, LLC, Redemption, LLC, and Westfair, LLC *for claims of fraudulent transfer of real property*.") (emphasis added).

10

77.     Conn. Gen. Stat. § 52-380a also requires that a payment order is a prerequisite to an enforceable Money Judgement. See Conn. Gen. Stat. § 52-380a.

78.     When the Defendants filed the False Filings, there was no properly entered payment order, no enforceable Money Judgement of any kind entered in the Bridgeport Action or otherwise.

79.      Further, when CUFTA remedies are sought concurrent in an action to prove a debt and obtain a Money Judgment, the CUFTA remedies are conditional, available only after the proving the debt and the award of a Money Judgment. Conn. Gen. Stat. §52-552h.

80.     Consequentially, even if CUFTA was not the sole basis for the Defendants seeking relief in the Bridgeport Action, no enforceable Money Judgment was entered, then no CUFTA remedies could have entered in the Bridgeport Action either.

81.     Nevertheless, the sole basis for Defendants' claim to possess a purported default Money Judgment, and the source of any damages alleged to be due them, is a document "attached" to the False Filings, which Defendants claimed was "A copy of the Judgment . . . ."

82.     The alleged "copy of the Judgment" that Defendants "attached" to the False Filings was not an enforceable judgment; it was not legal, valid, nor in the required form of a judgment from any Connecticut Court, and it did not constitute proof that any enforceable Money Judgment had entered.

**The False Filings are falsely filed or invalid filings under §§ 47-31a and 42-9-518 (f) 49-51.**

83.     Neither the Transcript excerpt nor the Judgement File in the Bridgeport Action were ever signed by a judge.

84.     Upon information and belief, the Transcript excerpt attached to the False Filings is not a true and accurate copy if an officially-prepared and certified court hearing transcript.

85.     The Transcript does not contain an enforceable order by the Bridgeport Court directing Plaintiffs to pay any sum to Defendants or creating a payment Order.

11

86. No enforceable order for payment was mentioned in any version of the transcript.

87. No orders were made by Judge Gould in the Bridgeport Action subsequent to the June 21, 2024 hearing.

88. A "Judgement File" signed by an Assistant Clerk, was entered on the docket on October 22, 2024 – almost a month-and-a-half after the Defendants caused the False Filings to be filed on the Property's land records.

89. No Judicial Notice (a/k/a "JDNO") ever issued ordering Plaintiffs to make any payments to Defendants, nor did a JDNO issue with respect to the June 21, 2024 hearing.

90. Defendants never made a demand for payment upon Plaintiffs or any of their Counsel and during the times relevant were in active communication with Plaintiff's counsel.

91. Upon information and belief, Defendants' failure to communicate any demand for payment from Defendants during the relevant times, was part of a deliberate effort by Defendants to deceive the Plaintiffs regarding the False Filing and to conceal the Defendants' deception.

92. Upon information and belief, during this period, Defendants deliberately withheld from Plaintiffs knowledge of Defendants' false land records filings, which Defendants had "restricted" from public view in the Easton land records.

93. Upon information and belief, during this period, Defendants deliberately withheld from Plaintiffs knowledge of Defendants' false claim to possess an enforceable Money Judgement.

94. Likewise, the Defendant's purported "judgment," namely the Transcript, is ostensibly not in the proper / required form of an enforceable Money Judgment and does not contain an Order for payment; thus, it is not an enforceable Money Judgment.

12

95.     The Defendants representing the existence of an enforceable Money Judgment when they filed the False Filings constitutes a false statement within the False Filing, and renders it is a filing made under false pretenses because:

a.     an order for payment is a condition precedent to the issuance of an enforceable Money Judgment;

b.     without a Judge's signature, there was no enforceable order for payment or enforceable Money Judgment.

96.     Cause exists to doubt the validity of the False Filings.

### THIRD COUNT: CIVIL FRAUD

97.     The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

98.      Defendants' False Filings is a falsely filed record with Intent to Defraud, Deceive, Injure and Harass in the meaning of Conn. Gen. Stat. § 53a-142a.

99.     The True and Original Transcript (Exhibit "**E**") was eventually obtained by Plaintiffs in 2025.

100.    In the False Filings, the Defendants represent as a statement of fact that they possessed an enforceable judgment against the Plaintiffs at the time they filed the False Filings.

101.    The Defendants' representation was untrue and known to the Defendants to be untrue at the time they made that representation.

102.     The Defendants made the untrue statements in the False Filings to induce the public, and more specifically, potential buyers of the Property, to rely on the untrue representations and to hesitate, delay, or decline purchasing the Property, and to compel the Plaintiffs to pay the Defendants money under false pretenses, thus injuring the Plaintiffs.

103.    The Defendants' untrue representations illegally manipulated, influenced, altered, and suppressed the market for the Property, thus injuring the Plaintiffs.

104.    The True and Original Transcript reveals Defendant Ismet Pupovic lied under oath in the Bridgeport Action.

105.    Defendant Ismet Pupovic, made knowingly false statements under oath at the June 21, 2024 hearing in connection with the Bridgeport Action, when he testified:

> "Well, we -- we put down 90,000 to get the property, and then he [the Plaintiffs' principle] ran off with our money." (Exhibit "**E**" at p. 4, para. 26-27)

106.    This statement, made by Defendant Ismet Pupovic under oath, is false, and was false at the time he made it.

107.    Plaintiffs never "ran off with" Defendants $90,000, nor did the Plaintiffs ever take any act to take, steal, embezzle, asport, convert, or even possess the Defendants' funds.

108.    Plaintiffs never had possession of the Defendants' $90,000.00 deposit, nor were Plaintiffs ever in a position to direct the disposition of those funds.

109.    Defendants deposited their $90,000.00 into the trust of a third-party real estate attorney, Law Offices of Felicia B. Watson, PLLC, who held the funds in escrow in relation to the original proposed sale of the Property. See November 7, 2022 Motion for Interlocutory Judgment of Interpleader in *Pupovic et al v. Diamond Tucker ST Property, LLC et al*, HHD-CV-226157379-S ("The Hartford Action"), attached as Exhibit "**F**".

110.    The real estate attorney paid the Defendants' $90,000 deposit funds directly into the Superior Court pursuant to an interlocutory interpleader action the real estate attorney brought as part of The Hartford Action. See November 28, 2022 Order Granting Motion for Interlocutory Judgment of Interpleader, attached as Exhibit "**G**".

111. On October 30, 2023, the Defendants moved the Superior Court to disburse the $90,000 deposit to them. See October 30, 2023 Motion for Entry of Order Disbursing Funds, attached as Exhibit "**H**".

112. On November 21, 2023, the Court (Stuart D. Rosen, J) granted the Defendants' Motion to Disburse Funds, ordering that the Defendants' $90,000 deposit funds be transferred by the Court to the Defendant's own attorney, Maki Law, LLC. See Order, attached hereto as Exhibit "**I**":

> "As stated on the record with all counsel present, the $90,000.00 interpleader funds held by the court shall be paid to Maki Law, LLC, as Trustee for the plaintiffs, Karen Pupovic and Ismet Pupovic."

113. On June 21, 2024 – seven months after the Court ordered the Defendants' $90,000 deposit funds be transferred from the Court to the Defendant's attorney – Defendant Ismet Pupovic falsely testified, under oath, that the Plaintiffs "ran off with" the very $90,000 deposit that Judge Rosen had previously released from the court's possession to the Defendants' own attorney.

114. Defendant Ismet Pupovic's testimony was knowingly false at the time it was given.

115. The Defendants knew that the Plaintiffs never had possession, custody, or control of the Defendants' $90,000 deposit at the time Defendant Ismet Pupovic testified that the Plaintiffs "ran off with" Defendants money.

116. Defendant Ismet Pupovic's knowingly false statements under oath were made with the intent to defraud, deceive, injure, harass, and annoy the Plaintiffs and their agents.

117. The document recorded in the Easton Land Records by Defendants and purported to be a true and original official court transcript filed by Defendants in the False Filings deliberately concealed Defendant Ismet Pupovic's false testimony under oath.

118.    Notwithstanding the falsity of Defendant Ismet Pupovic's testimony, his spurious statement that Plaintiffs "ran off with" with Defendants $90,000 became the predicate for Defendants' subsequent demand for "compensatory damages" of $628,411.75 in the Bridgeport Action.

119.    Thus, without any basis in law, and with the intent to defraud, deceive, injure, harass, and annoy Plaintiffs, to improperly and artificially influence, affect, and suppress the market for the Property, and to falsely compel Plaintiffs to pay money not rightfully owed, Defendants made the further untrue representations in the False Filings to attach Plaintiffs' property.

120.    The Defendants caused the False Filings to be recorded on the Easton Land Records with the intent to defraud, deceive, injure, harass, and annoy Plaintiffs and their agents.

121.    The Defendants caused the False Filings to be recorded on the Easton Land Records with the intent to defraud and deceive the public into believing the False Filings were legitimate, thus creating a cloud on the Property's title and an impediment to the Property's marketability, all to the Plaintiffs' detriment.

122.    As a result of the Defendants' conduct, the Plaintiffs have suffered, and continue to suffer, significant damages, expense, and attorney fees.

123.    The False Filings should be adjudged as void in their entirety and invalid.

124.    This Court should enjoin the Defendants from taking any further unlawfully action relating to the Property.

### FOURTH COUNT: UNFAIR TRADE PRACTICES
### CONN. GEN. STATS § 42-110a et. seq.

125.    The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

126.    At all times relevant to this action, the Defendants were involved in the act of conducting business or commerce in Connecticut by transacting to purchase real estate in this state within the meaning of Connecticut General Statutes § 42-110a, et. seq. ("CUTPA").

16

127.    Defendants engaged in an unfair method of competition or an unfair or deceptive act or practice in the conduct of trade or commerce and that this caused the Plaintiffs to sustain an ascertainable loss.

128.     Defendants' false statements of fact, and how the Defendants distributed and published those false statements of fact at the time they were made, were likely to mislead consumers, competitors or other business persons seeking to buy and/or sell real estate in Connecticut, and specifically the Property.

129.    Defendants' conduct offends public policy by tortiously and materially affecting the price and marketability of Connecticut real estate by use of representations known to Defendants to be untrue or made with reckless disregard for the truth of the matter, in both sworn court testimony and in presumptively official land record filings.

130.    Defendants' conduct is immoral, unethical, oppressive, and unscrupulous.

131.    Defendants' conduct improperly influenced the marketability of Connecticut real estate; thus it has caused substantial and ascertainable injury to consumers, competitors or other business persons, specifically including the Plaintiffs, seeking to buy and/or sell real estate in Connecticut, and specifically the Property.

132.    Such substantial and ascertainable injury includes, but is not limited to, lost opportunities to market and sell the Property, increased carrying and administrative costs, diminished marketability and sales price of the Property, and attorney fees and litigation costs.

## FIFTH COUNT: PROTECTIVE ORDER
## CONN. GEN. STAT. § 52-400a(b)

133.    The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

134.    Conn. Gen. Stat. § 52-400a(b) states, "(b) On motion of a judgment debtor alleging that the judgment creditor is engaged in any illegal levy or in any other practices for the purpose of collecting

17

his judgment which violate state or federal law, or on its own motion, the court may render such protective order as justice requires."

135.    Here, Defendants' counsel acknowledged the deficiencies with service of process.

136.    The net effect is that Defendants are prosecuting a claim for which they have acknowledged that service of process was deficient.

## SIXTH COUNT: PROTECTIVE ORDER
### CPLR § 5240

137.    The foregoing paragraphs are restated and included in this Count as if fully set forth herein.

138.    CPLR § 5240 states, "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

139.    Here, Defendants' counsel acknowledged the deficiencies with service of process.

140.    The net effect is that Defendants are prosecuting a claim for which they have acknowledged that service of process was deficient.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request and pray this Court:

a)    Enter an Order Enjoining and restraining Defendants and their Counsel from undertaking any further collection or litigation actions to enforce any alleged Judgment obtained in the Connecticut Superior Court, including, but not limited to, the action entitled *Pupovic, et al v. Diamond Tucker St. Property, LLC, et al*, Superior Court of Connecticut, Judicial District of Fairfield, at Bridgeport, Docket No. FBT-CV23-6129303-S.

b)    Enter a Protective Order pursuant to Conn. Gen. Stat. § 52-400a(b).

c)    Enter a Protective Order pursuant to CPLR § 5240.

d)    Enter an Order Enjoining and restraining Defendants and their Counsel from collection efforts and pursuing a false collection action.

e)    Enter an Order Enjoining and restraining Defendants and their Counsel from any attempt to enforce any falsely alleged Judgment complained of herein which they claim to possess against the Plaintiffs.

f)    Find that cause exists to doubt the validity of the False Filings in accordance with § 47-31a and 42a-9-518 (f)(1) of the Connecticut General Statutes;

g)    Order that a hearing be held within 60-days of such determination in accordance with §§ 47-31a (a) and 42a-9-518 (f)(1) of the Connecticut General Statutes;

h)    Find that the False Filings were falsely filed or amended and are invalid, and enter judgment in favor of the Plaintiffs in accordance with §§47-31a (a) and 42a-9-518 (f)(4) of the Connecticut General Statutes;

i)    Find that the False Filings were falsely filed or amended and are invalid, and enter judgment in favor of the Plaintiffs in accordance with §§49-51 of the Connecticut General Statutes;

19

j)      Find that the Defendant's additional land records recordings in connection with the False Filings are invalid and are not effective attachments in accordance with §49-8, §49-13, §52-325 and other provisions of the Connecticut General Statutes;

k)      Find that as a matter of common law, the falsity of Defendant's False Filings warrants invalidation;

l)      Issue an Order for discharge of the False Filings under §52-325 and other provisions of the Connecticut General Statutes, and issuance a certificate of the Court Clerk under §52-324 and other provisions of the Connecticut General Statutes;

m)      Enter an Order enjoining and prohibiting the Defendants from recording further false documents on the Easton land records and to cease all threats and behaviors of harassment directed at Plaintiffs and agents in accordance with §§ 47-31a (a) and 42a-9-518 (f)(4) of the General Statutes;

n)      Direct the Easton Town Clerk to note that the False Filings are not valid in accordance with§§ 47-31a (a) and 42a-9-518 (f)(4) of the Connecticut General Statutes. and to accept a copy of the Complaint, this Court's judgment, and the Court Clerk's §52-324 certificate for filing in the Easton land records; and

o)      Grant the Plaintiffs such other relief as the Court deems just and appropriate.

Dated: July 31, 2026

Respectfully submitted,

_____//s//___Roderick D. Woods_____
Roderick D. Woods, Esq.
RODERICK D. WOODS, P.C.
880 Third Avenue - Fifth Floor
New York, New York 10022
Telephone: (212)653-8754
Facsimile: (212) 656-1555
Email: roderick.woods@rdw-law.com

*Attorneys for the Plaintiffs*

20